IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 15-3955 JB |
| | ) | |
| **DARRYL GUTIERREZ**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America respectfully submits its sentencing memorandum, which includes its response to the defendant's Sentencing Memorandum [Doc. 106] and defendant's Addendum to Sentencing Memorandum [Doc. 109].   For the reasons set forth below, the government believes a sentence at the top of the guidelines range, if not longer, is both necessary and appropriate to implement the sentencing goals of 18 U.S.C. § 3553(a).  Additionally, it is requested that the Court order the defendant to (1) *immediately* pay restitution to the IRS in the amount of $174,196, (2) pay the costs of prosecution, and (3) *immediately* reimburse the public defender's office for the cost of representation.

## I.      Introduction

The defendant was indicted on Nov. 5, 2015, and charged with one count of obstructing and impeding the due administration of the internal revenue laws from 1997 to 2013, and ten counts of making and subscribing false tax returns in tax years 2000 to 2009.

The trial of the defendant on the eleven-count indictment began on March 27, 2017, and concluded on March 30, 2017, when a jury returned a guilty verdict on all eleven counts.

The evidence at trial was undisputed.  The defendant was an electrical engineer who worked at Los Alamos National Laboratory (LANL) for almost 30 years, until he was fired in April 2009, for failing to pay his state and federal taxes.  The defendant earned an annual salary ranging from $80,000.00 to $115,000.00 in tax years 2000 to 2009.  After 22 years of regularly filing timely income tax returns with the IRS, the defendant stopped complying with the federal tax laws in 1994, stopped filing federal tax returns, stopped paying federal income taxes and began engaging in a pattern of obstructive conduct to prevent the IRS from assessing and collecting his taxes.   The defendant's obstructive tactics included regularly sending frivolous correspondence to the IRS, sending threatening communications to the IRS and H&R Block, and, submitting, under penalty of perjury, false tax information to his employers and the IRS. For instance, the evidence was undisputed that the defendant submitted, under penalty of perjury, false withholdings information (Forms W-4) to his employers (LANL, TechUSA and Buffalo Thunder) and false statements of his wages on personal income tax returns (Forms 1040) filed with the IRS.  The evidence further showed that between November 2010 and January 2011, the defendant filed ten false federal income tax returns for tax years 2000 to 2009 seeking a refund totaling $173,526, when in fact he owed the IRS approximately $125,000 (not including interest and penalties).[1]  *See* Gov't Trial Ex. 2, 3, 5 & 8-17.

Further, it is undisputed that the defendant has a history of failing to comply with his state tax obligations as well.  In February 2007, while working at LANL, the defendant was informed that he was the subject of a criminal investigation by the New Mexico Tax and Revenue Department (NMT&R) for failing to pay his state tax obligations.  That criminal

---

[1] With interest and penalties, the defendant owes the IRS $284,157.65 for tax years 2000-2009.  *See* Doc. 41.  The law, however, does not allow the IRS to recover interest and penalties as part of restitution in this criminal proceeding.

investigation was discontinued after the defendant filed his state returns and paid the taxes due.[2]

In addition, from 2007 to 2010, Gutierrez signed a series of New Mexico personal income tax

returns that reported accurate figures for federal Adjusted Gross Income and federal taxes due.

*See* Gov't Trial Ex. 1 (Summary Chart reflecting Income Reported to NMT&R and IRS for tax

years 2004 to 2009); *see also* Gov't Trial Ex. 18-23 (NM Personal Income Tax returns filed by

the defendant).  Moreover, after paying his overdue NM state taxes for tax years 2004 through

2006 in March 2007, in the hopes that NMT&R would stop its criminal investigation, the

defendant continued to file his state taxes on a timely basis for tax years 2007 to 2009.  *See*

Gov't Trial Ex. 18-23.  Nonetheless, while accurately reporting his federal adjusted income to

the state of New Mexico,[3] the defendant failed to file corresponding federal tax returns for the

same years.

        It is undisputed that the defendant was repeatedly informed of his obligations to pay

taxes, and thus that his "beliefs" to the contrary were without basis in logic or law.  The IRS told

him, Special Agent Parker told him, NM tax authorities told him, H&R block told him, state

courts told him, LANL told him and this Court told him (when it instructed the defendant to

review Tenth Circuit case law that rejected many of the same tired "tax protestor arguments"

advanced by the defendant).  Indeed, the only issue at this trial, and it was not really much of

one, was whether the defendant had a good faith belief that the law did not impose a duty on him

---

[2] Although not elicited at trial, it is undisputed that within 30 days of being confronted by NMT&R, the
defendant hired Santa Fe attorney Dan Cron and paid his overdue state income taxes.  This conduct is
further evidence of the defendant's knowledge that his "beliefs" about the tax code were "dead wrong."
*See* Doc. 107 (Trial Testimony of Darryl Gutierrez) at 26 ("I would love to know where I am dead wrong.
I mean, that was my whole idea of corresponding with them, was [for] them to show me the law. And if I
look it up and you're right, I'm wrong.")
[3] In March 2007, the defendant hired H&R Block to prepare his state and federal tax returns for the 2006
tax year.  Both returns reflected that the defendant owed additional state and federal taxes.  The defendant
did in fact file the 2006 state tax return; however, he did not file the federal return.

to pay income taxes.  Cleary, by its verdict, the jury rejected the defendant's testimony as untruthful.

Further, after 15 years of inundating the IRS with frivolous correspondence, the defendant continued his obstructionist behavior in this Court by advancing frivolous positions and motions with this Court and by his false testimony.  *See* Docs. 21, 22, 24, 25, 26, 107.   In addition, despite being told by this Court that his motions were frivolous and despite this Court's admonition that the defendant "[l]ook at those two cases[4] that [the government] references and make sure you don't file anything frivolous. . . . I just ask you to read those cases and make your arguments in accordance with established law," *see* Doc. 34 Tr. at 37 (lines 1 – 12), the defendant continued to advance his frivolous claims at trial, under penalty of perjury.  And, despite the long, procedural history and the jury's verdict, the defendant continues his defiant and obstructionist behavior today, as evidence by his "objections to the Presentence Investigation Report."  *See* Doc. 109-1.

## II.      Reimbursement of Public Defender

The government's request that the Court order the defendant to reimburse the Public Defender remains outstanding.  *See* Doc. 55 (Tr. of September 28, 2016 Hearing at 7, 32-33, & 47-48).  On August 18, 2016, the government filed a Motion to Show Cause requesting a hearing on whether the defendant should continue to receive the unpaid assistance of a federal public defender in light of information suggesting he was financially able to retain private counsel.  Doc. 29 (sealed). While the Court revisited the government's motion on several subsequent dates, on September 28, 2016, the Court conclusively resolved the matter after taking testimony from the defendant.  *See*

---

[4] The two cases are *Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990) and *United States v. Collins*, 920 F.2d 619 (10th Cir. 1990), two landmark Tenth Circuit cases dismissing as frivolous the typical "tax protestor arguments" advanced by the defendant.

Doc. 55.  At the conclusion of this hearing, this Court determined that the defendant had the financial ability to retain private counsel and released the Public Defender (John Butcher) from further representation.  The Court also ordered Mr. Butcher to submit, *ex parte,* an accounting of the hours/costs incurred by the public defender in the representation of the defendant.   The government understands that Mr. Butcher submitted the requested accounting as ordered.  At this time, the United States renews its requests that the Court order the defendant *immediately* reimburse the Public Defender for the time and costs incurred in representing the defendant.

### III.   Sentencing Guidelines and Restitution

The U.S. Probation Office correctly calculated the applicable advisory guidelines range at 33-41 months.  PSR ¶ 62.   The maximum term of imprisonment on each of the 11 counts is three years.  *Id.* at ¶ 61. The Court may impose a term of supervised release of not more than one year per count. 18 U.S.C. § 3583(b)(3).  *Id.* at ¶ 64.  Multiple terms of supervised release must run concurrently. 18 U.S.C. § 3624(e).  *Id.* at ¶ 65.  Since the applicable guideline range is in Zone D of the Sentencing Table, the guidelines do not authorize a probationary sentence. USSG §5B1.1, comment.(n.2).  *Id.* at ¶ 69.  Thus, the defendant's request for a probationary sentence should be summarily denied.

Further, the defendant does not take issue with how restitution was calculated, so the parties appear to agree that IRS is entitled to restitution in the amount of $174,196.[5]  (In light of the jury's verdict and the 15 years of procedural history, this Court need not spend any more time on the defendant's frivolous claim that he does not owe any restitution because he has no income tax liability).  *See* Doc. 109-1 at 10.

---

[5] After the PSR was issued, the United States submitted informal objections to the Probation Office requesting restitution of $174,196.  Defense counsel was provided a copy of the government's informal objections, as well as IRS' calculations in support of the additional restitution.

### IV.     Recommendation and Analysis Under 18 U.S.C. § 3553(a)

The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system.  Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. The sentence for the criminal tax scofflaw such as the defendant must be commensurate with the gravity of the offense, and should act as a deterrent to other potential violators.  The government respectfully recommends that the Court sentence the defendant at the top of the advisory sentencing guideline range.  Additionally, it is requested that the Court order the defendant to (1) immediately pay restitution to the IRS in the amount of $174,196, (2) pay the costs of prosecution, and (3) immediately reimburse the public defender's office for the cost of representation.

Although application of the United States Sentencing Guidelines is no longer mandatory, *see United States v. Booker*, 543 U.S. 220, 245 (2005), the Guidelines still play a "central role" in the sentencing decision, *United States v. Molina-Martinez*, 136 S. Ct. 1338, 1345 (2016). "[T]he Guidelines range sets an important benchmark against which to measure an appropriate Sentence."  *United States v. Corsey*, 723 F.3d 366, 375 (2d Cir. 2013).  Indeed, in most instances, "the Guidelines are not only the starting point . . . but also the lodestar." *Molina-Martinez*, 136 S. Ct. at 1346.

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient but not greater than necessary to achieve the statutory purposes of federal sentencing listed at § 3553(a)(2).  Those purposes are the need for the sentence imposed

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In choosing "the particular sentence to be imposed," the Court is to consider both those listed purposes and the other factors set forth at § 3553(a)(1) and (3)-(7).   A review of the relevant provisions of § 3553 supports the imposition of a sentence at the top of the guidelines range.

### a.   The Nature and Circumstances of the Offense

The nature and circumstances of the offense support a top of the guidelines sentence of 41 months, if not longer.   The defendant's crimes are serious ones.   "[W]hitecollar crimes such as wire fraud and tax fraud are 'serious, and typically will warrant serious punishment, including prison time." *United States v. Levinson*, 543 F.3d 190, 201 (3d Cir. 2008).   The defendant has not only refused to pay the taxes that he owed for over twenty years—a debt that far exceeds the $125,000 owed for the tax years charged in Counts 2 through 11—but he also took active measures to interfere with the IRS's collection of his debt.   By hampering the IRS's tax assessment and collection abilities in the manner that he did, the defendant has been able to live a tax-free life for decades, resulting in substantial financial benefit to himself, considering his engineer salary over 30 years.   Further, the defendant's attempt to obtain a refund, not only for federal income taxes paid, but for also Social Security and Medicare taxes withheld over the years, is particularly egregious considering this 62-year old defendant now is eligible to receive such benefits and will unquestionably do so.

Indeed, at a time when government programs are wholly underfunded and becoming insolvent, the defendant's refusal to pay his taxes while also causing additional precious taxpayer resources to be devoted to ensure his compliance with the tax laws, is an important factor warranting a sentence at the high end of the guidelines range.

### b.  **History and Characteristics of the Defendant**

The defendant is 62 years old, healthy, well educated, and financially secure.  Indeed,

after working as an electrical engineer for over 30 years while not paying taxes since 1994, the

defendant is very well off financially.   He reports a good childhood without any significant

traumas.  PSR at ¶ 37.  He has strong family ties, *id.* at ¶ 40, and he has no problems with

substance abuse, *id*. at ¶¶ 45 & 46.   Unlike many defendants who come before the Court for

sentencing, the defendant has nothing in his background that would explain or mitigate his

behavior.  Indeed the defendant's background supports a lengthier sentence, not a downward

variance as the defendant requests.  *See United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir.

1999) ("Criminals who have the education and training that enables people to make a decent

living without resorting to crime are more rather than less culpable than their desperately poor

and deprived brethren in crime.").

Additionally, since 1994, the defendant has been told repeatedly of his obligation to pay

income taxes, by IRS, by his employer, by state courts, by H&R Block, by NM tax authorities,

by this Court and by a federal jury.  Nonetheless, to this day, the defendant displays no remorse

for his conduct, and, despite the jury verdict, continues to "believe" that wages are not income

and that the tax laws do not apply to him, only the residents of the District of Columbia.  *See*

Doc. 109-1.  The defendant's so-called "objections to the Presentence Report," *see* Doc. 109, and

request for a downward variance, *see* Doc. 106, only serve to highlight the defendant's contempt

for the law and lack of remorse.  Further, the trial evidence revealed that the defendant

threatened H&R Block representatives in an effort to thwart compliance with an IRS summons.

*See* Trial Testimony of Virginia Barr.  To add insult to injury, the defendant stood silently by, as

this Court assigned the  public defender to represent him when the defendant knew full well he

did not qualify for a public defender.  Finally, even after the jury's verdict on March 30, 2017,

the defendant failed to file his state and federal income taxes returns, returns that were due approximately 15 days later.[6]  Thus, the history and characteristics of the defendant weigh heavily in favor of a sentence at the high end of the guidelines range.

      **c.**  **The Need for the Sentence Imposed to Promote Respect for the Law and Provide Just Punishment**

Since 1994, the defendant has exhibited no respect for the law and, indeed, believes he is above the law.  This fact cannot be more clearly evidenced than by his testimony before the jury, his request for a downward variance, and his "objections to the Presentence Report."  The "research" the defendant told the jury he conducted to support his "beliefs" was nothing more than picking and choosing favorable language from cases that he never read to support his pre-determined decision not to pay income taxes.  *See* Doc. 107 at 56 ("I pick what I think is important.").  Despite his so-called "good faith belief," the defendant conducted no meaningful research, he did not read the cases he claimed supported his "beliefs," he did not read the tax code, he did not seek the assistance of counsel or a CPA, he ignored this Court's order to review applicable Tenth Circuit case law and anything that contradicted his "beliefs" and, instead, sought out "tax protestor" websites and other questionable sources to find specious arguments to avoid his tax obligations.  *See generally id.*  Further, the defendant's refusal to review anything that was contrary to his so-called "beliefs" and his failure to comply with his state tax obligations confirms that he was trying to escape taxes generally, further illustrating the duplicity and untruthfulness of his trial testimony that he was merely waiting for answers from the IRS regarding his federal tax obligations.  *See id.* at 26 ("I would love to know where I am dead

---

[6] IRS records reveal the defendant withdrew $191,304 from two retirement accounts in 2016.  Although $31,200 was withheld in federal taxes at the time of disbursement, preliminary calculations suggest the defendant owes over $10,000 in additional taxes for the 2016 tax year.

wrong.  I mean, that was my whole idea of corresponding with them, was [for] them [to] show

me the law.  And if I look it up and you're right, I'm wrong.").  In short, the defendant's

testimony in light of his age, education level and employment history not only defies belief, but

also illustrates the defendant's contempt for the tax laws.

Nor can this Court overlook the defendant's patently frivolous filings in this case,

including his most recent, "objections to the Presentence Report" [Doc. 109].  As the Court is

aware, the defendant is no stranger to making frivolous arguments before state and federal courts

as it benefits him.  *See e.g., See American Citizens v. United States Government*, No. 05-cv-1259

(D.N.M. May 2006) (Doc. 34 & 41) (Armijo, J.) (denying defendant's motion to

intervene and dismissing complaint while "recogniz[ing] the leniency typically given to *pro se*

plaintiffs, "[t]his court simply will not allow liberal pleading rules and *pro se* practice to be a

vehicle for abusive documents.") (citation omitted); *Antonio Gutierrez v. Government of New*

*Mexico, et al,* No. 03-cv-774 (D.N.M. Aug. 14, 2003) (Doc. 25) (Parker, J.) (denying defendant's

motion to intervene as moot after dismissing complaint and finding "Plaintiff's claims are

frivolous."); *Darryl J. Gutierrez v. Michael Yesley, et al.*, No. 20,522 (N.M. Ct. App. 2000)

(Gov't Trial Ex. 72c) (upholding trial court's dismissal for failure to state claim finding

defendant is employee under tax code and "to conclude otherwise . . . would be contrary to logic

and law.").  Additionally, when arrested for DUI in Pagosa Springs in April 2014, after rear-

ending another vehicle, the defendant filed a frivolous motion challenging the Colorado state

court's jurisdiction to hear his DUI.  *See People v. Darryl Gutierrez*, No. 2014T139 (Archuleta

County, Colo. Aug. 7, 2014) (wherein the state court summarily denied "the defendants [sic]

Demand for Hearing to Order Proof of Jurisdiction" and finding the defendant "fails to cite any

authority requiring such a hearing . . . and the Court is unaware of any case in Colorado or

elsewhere which has held that a hearing such as defendant seeks would be appropriate or that any of defendants [sic] jurisdictional arguments are applicable to this matter.").   The defendant's frivolous filing in his DUI case is very similar to the frivolous pretrial motions filed in this case wherein the defendant challenged this Court's jurisdiction.  *See* Doc. 21.

As reflected above, the defendant's conduct is not limited to his so-called "beliefs" about the federal tax code, but about his belief that he is above the law.  Indeed, even after the jury's resounding verdict, this defendant remains defiant in his so-called "beliefs" that the tax code does not apply to him, having once again failed to file federal or state tax returns, returns that were due approximately 15 days after the jury's verdict.  *See* PSR ¶ 60.  Particularly troubling is, even now, after all these years, the defendant continues to advance his frivolous claims and makes clear his intent to continue to defy the tax laws.  Perhaps more troubling are his newest claims that the state court judges (who rejected his frivolous arguments) are "impersonators," that he was "kidnapped" by "IRS agents impersonating certified New Mexico Law Enforcement Officers," and his continued challenge of this Court's jurisdiction and well-established case law. *See generally* Doc. 109-1.

Promoting respect for the law requires that there be meaningful consequences for breaking it.  Anything less than a top of the guidelines sentence in this case would fail to achieve this particularly salient goal, though an upward variance would certainly be justified in light of the defendant's most recent filing.  *See* Doc. 109-1.  Indeed, granting the defendant's request for a probationary sentence or downward variance would send the message that there is little consequence to refusing to pay your taxes, waging a 15-year war with the IRS, testifying falsely, and continuing to maintain, to the present day, that the law does not apply to him.

11

Likewise, "just punishment" requires — at the very least — that the punitive effect of the sentence outweigh the benefit to defendant of the years he spent living with the additional income he should have paid in taxes.  The sentence should extend beyond the restitution that must also be imposed in this case, and should include a substantial period of incarceration.  These § 3353(a)(2) factors weigh heavily in favor of a sentence of no less than the top of the guidelines.  Indeed, to vary downward as the defendant requests would send the message "that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty."  *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).

### d.   The Need for the Sentence Imposed to Afford Adequate Deterrence

Imposition of the requested prison sentence will result in specific and general deterrence and protection of the community.  Congress has mandated that district courts impose sentences that are sufficient to "afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(B); *United States v. Paulino-Guzman*, 807 F.3d 447, 450 (1st Cir. 2015) ("Congress not only permits the district courts to consider deterrence as a sentencing factor but mandates that they do so.").

General deterrence plays an especially important role in sentencing for criminal tax offenses, because criminal tax prosecutions are relatively rare:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. ch 2, pt. T, introductory cmt.  The appellate courts have repeatedly affirmed the importance of general deterrence in determining a sentence, especially in the area of white-collar

crime.  The Tenth Circuit has called it a "crucial factor" in sentencing decisions for economic crime, noting that the Senate Report for the Comprehensive Crime Control Act of 1983 deemed deterrence to be "particularly important in the area of white collar crime."  *United States v. Morgan*, 635 Fed. App'x 423, 450 (10th Cir. 2015) (unpublished) (quoting S.Rep. No. 98–225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259); *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (recognizing that deterring white-collar crime is "of central concern to Congress").

As the trial testimony revealed, the IRS has been forced to devote precious resources to dealing with a populace of tax cheats and scofflaws often described in case law by the misnomer "tax protestors."   Specifically, the IRS has been forced to create a separate unit (the Frivolous Return Program) to deal with tax cheats and scofflaws like the defendant.  As a result, untold taxpayer resources must be spent cataloging and responding to such frivolous filers, in an effort to obtain compliance with the federal tax laws.  Other tax cheats and scofflaws like the defendant must understand that similar obstructionist behavior has real consequences, beyond having eventually to pay their long overdue taxes.   Indeed, this Court will recall that this defendant also utilized so-called "tax protestor" websites, to include Save-A-Patriot Fellowship[7] and Sovereignty Education and Defense Ministry.[8]  Thus, general deterrence is an important and

---

[7] The defendant testified that he utilized the services of John B. Kotmair, Jr., and Kotmair's Save-A-Patriot Fellowship (SAPF) from 1998 to 2007.  Doc. 107 at 93-100.  The defendant testified he never met Kotmair, who resides in Maryland.  *Id.*  In November 2006, the Maryland U.S. District Court permanently enjoined Kotmair and SAPF from providing frivolous tax advice/services and ordered Kotmair to notify customers of the injunction and to publish the injunction on the SAPF website.  *See United States v. John Baptist Kotmair, Jr.*, 05-CV-1297, D. MD. 2005, Doc. 70.  Although the defendant testified that he was not aware of the injunction, his discontinuation of Kotmair's services coincides with the issuance of the injunction and his knowledge of it.  *See id., D*oc. 98 ¶ 12 (certification that Kotmair "mailed every member of the Save-A-Patriot Fellowship a copy of the permanent injunction.")

[8] The Court will recall the defendant's *Pro Se* Notice of Challenge to Jurisdiction [Doc. 21], a frivolous, nonsensical filing that included over 100 pages of attachments.  The defendant's motion, memorandum and exhibits appear to have been obtained from a website called Sovereignty Education and Defense

weighty consideration in this case that warrants a sentence of no less than the top of the guidelines range, if not longer.

The defendant's request for a probationary sentence or downward variance would wholly fail to afford deterrence to others.  "[T]he threat of spending time on probation simply does not, and cannot, provide the same level of deterrence as can the threat of incarceration in a federal penitentiary for a meaningful period of time."  *United States v. Livesay*, 587 F.3d 1274, 1279 (11th Cir. 2009).  In *Morgan*, the Tenth Circuit held a white-collar defendant's probationary sentence to be substantively unreasonable in part because it "fail[ed] to see how a non-custodial sentence could deter" similar conduct.  635 Fed. App'x at 450 (calling the sentence a "drastic and unreasonable variance" from the Guideline range of 41 to 51 months).  Other courts are in accord, reversing sentences that fail to achieve the statutory goal of deterrence.  *United States v. Kuhlman*, 711 F.3d 1321, 1328 (11th Cir. 2013) ("We are hard-pressed to see how a non-custodial sentence serves the goal of general deterrence."); *United States v. Pugh*, 515 F.3d 1179, 1195 (11th Cir. 2008) ("Quite simply, by imposing a non-custodial sentence, the district court accorded no weight to general deterrence."); *United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012) (criticizing a district court's "inexplicable" comment that general deterrence had little to do with the case).

Additionally, at the level of specific deterrence and protecting the public from further crimes perpetrated by the defendant, the sentence must carry a message that will adequately deter *this* defendant from future misconduct.  Given that the defendant is defiant and feels no remorse that might serve as an internal constraint against committing future tax violations, the specific deterrent effect of the sentence is particularly important here.   The defendant's claim that "his

---

Ministry (www.sedm.org). This website provides sample forms identical to those attached as exhibits to the defendant's motion, while other so-called "legal" pleadings are available only to paying members.

chances of recidivism are likely lower," *see* Doc. 106 at 5, ignores the fact that defendant engaged in a 15-year war with the IRS and continues to "believe," to the present day, that he is not subject to the federal tax code.   Indeed, when informed by this Court to review Tenth Circuit case law and not to make frivolous arguments, the defendant nonetheless continued to espouse his so-called "beliefs" before the jury, under penalty of perjury, and continues to do so today, even after the jury's resounding verdict.   Further, the defendant has been told repeatedly, by his employer, by H&R Block, by the IRS, by the New Mexico state courts, by this Court, and now by a jury that his "beliefs" are without basis in law or logic.  The defendant, a well-educated man, simply refuses to follow the law.  As such, specific and general deterrence weigh heavily in support of the imposition of a top of the guidelines sentence, if not longer.  In light of the defendant's continued defiance, as reflected in his most recent submission to this court, *see* Doc. 109, an upward variance would be justified.

### e.   The Sentencing Guidelines for the Applicable Category of Offense Committed by the Applicable Category of Defendant

The Court must consider under 18 U.S.C. § 3553(a)(4) the sentencing range established by the United States Sentencing Commission for the applicable category of offense committed by the applicable category of defendant.  That range in this case has been set at 33 to 41 months' imprisonment.  PSR at ¶ 62.  As the Tenth Circuit has explained, "the Guidelines are an expression of Congress's intentions in passing the sentencing laws."  *United States v. Hildreth*, 485 F.3d 1120, 1128 (10th Cir. 2007) (quotation marks omitted).  "Moreover, a properly calculated Guidelines sentence will typically reflect an accurate application of the factors listed in § 3553(a)."  *Id.* (quotation marks omitted).  A sentence at the top of the guidelines range appropriately accounts for this factor.

**f.**   **The Need to Avoid Unwarranted Sentencing Disparities Between Defendants Who Have Committed Similar Crimes**

A sentence within the guideline range is the best approach to preventing unwarranted sentencing disparities between similarly situated defendants.  "[T]he purpose of the Guidelines is to promote uniformity in sentencing so as to prevent vastly divergent sentences for offenders with similar criminal histories and offenses."  *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (alteration omitted).  Even after *Booker*, "[t]he Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."  *Id*.  The values of the justice system are undermined when there is substantial variance in sentences for similar offenses between judicial districts and even between individual judges in a single district.  Furthermore, uniform application of the Guidelines can temper the unconscious influence of inappropriate factors in sentencing such as race, gender, or socioeconomic class.  Given the compelling interest served by the guidelines in avoiding unwarranted and unjust disparities in sentencing, any variation from the guideline range should be justified by equally important factors.  Indeed, the only important factors at play in this case warrant a top of the guidelines sentence, if not longer.

**g.**   **The Need to Provide Restitution to the Victim of the Offense**

This is not a factor for consideration.  For years, the defendant has amassed a small fortune based, in part, on the savings resulting from his failure to pay state and federal taxes.  As reflected in the PSR at ¶ 56, the defendant is capable of paying restitution in full immediately, as well as the cost of his incarceration, a large fine and reimbursement to the Public Defender's service.[9]

---

[9] In addition to the assets identified in the PSR, the defendant was required to post a $200,000 cash bond after the jury verdict.  *See* Doc. 93.

## CONCLUSION

Full consideration of the relevant factors should lead the Court to the conclusion that nothing less than a sentence of incarceration at the top of the guidelines range will be sufficient to accomplish the purposes of sentencing.  The United States respectfully asks the Court to impose a sentence of imprisonment of 41 months, though this Court would be justified in varying upward based on the defendant egregious conduct.  Additionally, it is requested that the Court order the defendant to (1) immediately pay restitution to the IRS in the amount of $174,196, (2) pay the costs of prosecution, and (3) immediately reimburse the public defender's office for the cost of representation.  Such a sentence is commensurate with the scope and duration of the defendant's criminal conduct, which continues to the present day.

Respectfully submitted,

JAMES D. TIERNEY
Acting United States Attorney


**/s/ Electronically Filed 9/12/17**
MARGARET VIERBUCHEN
HOLLAND S. KASTRIN
Assistant United States Attorneys
Post Office Box 607
Albuquerque, New Mexico 87103
(505) 346-7274


I hereby certify that a copy of this
pleading was delivered via CM/ECF
to counsel for Defendant this 12th day
of September, 2017.

_*/s/*_____
Margaret Vierbuchen
Assistant United States Attorney